IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION

### SEPTEMBER TERM, 1923.

MAYOR AND ALDERMEN OF TOWN OF JONESBORO *v.* E. H.
KINCHELOE.*

(*Knoxville.* September Term, 1923.)

1. **MUNICIPAL CORPORATIONS.** Reasonableness of an ordinance involves indefiniteness.

As respects validity of an ordinance the question of uncertainty or indefiniteness is involved in the rule of reasonableness. (*Post, pp.* 690, 691.)

2. **MUNICIPAL CORPORATIONS.** Court should adopt valid construction of ordinance.

Where an ordinance is susceptible of two construction, the court should adopt the one which will render it valid. (*Post, p.* 691.)

Case cited and approved: Carroll Blake Cons. Co. v. Boyle, 140 Tenn., 181.

3. **MUNICIPAL CORPORATIONS.** Municipality may regulate keeping of calves.

A municipality has the power to enact an ordinance regulating keeping of calves within the corporate limits under the general govern-

---

*On power of municipality to regulate keeping of 1 live stock, see notes in 38 L. R. A. 332 and 39 L. R. A. (N. S.) 266.

Mayor, etc., of Jonesboro v. Kincheloe.

ing authority of a community to preserve the health and comfort of its inhabitants. (*Post*, *pp.* 691, 692.)

Case cited and distinguished: Maxwell v. Corporation of Jonesboro, 58 Tenn., 257.

4. **MUNICIPAL CORPORATIONS.**    Execution of ordinance should not be left to caprice.

Ordinances should be certain in their application and operation, and their execution not left to the caprice of those whose duty it is to enforce them. (*Post*, *pp.* 692, 697.)

Cases cited and approved: Jones v. Nashville, 109 Tenn., 558; Standard Oil Case, 221 U. S., 1; Tobacco Trust Case, 221 U. S., 107; State v. Goldstone, 144 Minn., 405; Schultz v. State, 89 Neb., 34; State v. Smith, 29 R. I., 245.

Case cited and distinguished: State v. Schaeffer, 96 Ohio St., 215.

Code cited and construed: Secs. 2857, 6776 (S.).

5. **MUNICIPAL CORPORATIONS.**    Ordinance must be definite.

An ordinance must be certain and definite, so that the average man, with due care, after reading the same, will understand whether he will incur a penalty for his actions or not. (*Post*, *pp.* 697, 698.)

6. **MUNICIPAL CORPORATIONS.**    Ordinance regulating the keeping of calves held valid.

An ordinance making it unlawful to keep calves within the corporate limits of a town overnight for the purpose of sale or shipment in such a manner as to disturb the residents by their noises *held* valid as sufficiently certain. (*Post*, *p.* 698.)

---

FROM WASHINGTON.

---

Appeal from the Circuit Court of Washington County to the Court of Civil Appeals, and by *certiorari* to the

138 Tenn.—44

Court of Civil Appeals from the Supreme Court.—Hon. D. A. Vines, Judge.

Epps & Epps and E. J. Baxter, for Mayor, etc., of Jonesboro.

Divine & Guinn, for Kicheloe.

Mr. Justice Chambliss delivered the opinion of the Court.

The question presented on this appeal involves the construction of an ordinance passed by the town of Jonesboro prohibiting the keeping of calves overnight within the corporate limits in such manner as that residents of the town will be disturbed by their noises; the pertinent section of the ordinance reading as follows:

"Be it ordained by the mayor and aldermen of Jonesboro, that it shall be unlawful for any person, firm, or corporation to keep, or allow to be kept on his, their or its premises, within the corporate limits of said town, calves over night, for the purpose of sale or shipment, in such way or manner as that they will disturb the residents thereof by their noises."

The validity of this ordinance was attacked in the circuit court upon the grounds that it was unreasonable and indefinite. The circuit court sustained the attack solely upon the ground of its alleged indefiniteness. From this judgment the town brought the case to the court of civil appeals for review. That court affirmed the judgment below, holding the ordinance to be too indefinite and also unreasonable. In view of the fact that the plaintiff be-

low did not appeal from the judgment of the circuit court, and that the assignment of error presented in the court of civil appeals raised solely the question of the alleged indefiniteness of the ordinance, it is insisted that this was the sole question proper for consideration by that court, and is the sole question presented here. It is difficult, and perhaps unnecessary, to draw this distinction, for the question of uncertainty or indefiniteness is involved in the rule of reasonableness, as an ordinance is unreasonable unless it is "certain in its definition of the offense, and certain in the penalty inflicted by it."

In considering the validity of this ordinance the rule of construction is that laid down in *Carroll Blake Cons. Co.* v. *Boyle*, 140 Tenn. 181, 203 S. W., 948, to the effect that, where an ordinance, like a statute, "is susceptible of two constructions one of which will render it void and the other valid it is the duty of the court to adopt the latter."

There is no doubt about the power of the municipality to enact an ordinance having the general scope and purpose of the one under consideration. Its general purpose comes clearly within the general governing authority of a community to preserve the health and comfort of its inhabitants. Conceding that the question of unreasonableness is to be considered in the state of the record, we are of opinion that, if properly framed, ordinance regulations restricting the hours within which calves or other animals might be brought and kept within the city limits for purposes of sale or shipment, that is, the conducting of this business, would unquestionably be valid. This general principle is laid down in *Maxwell* v. *Corporation of Jonesboro*, 11 Heisk, 257, Chief Justice NICHOLSON in his opinion saying:

"The mayor and aldermen of Jonesboro were the proper persons to determine what restrictions were proper for the preservation of peace and good order in that town during the nighttime. The presumption is, that they have discharged their trust with fidelity; nor can we assume to say that the ordinance in question was either unreasonable or oppressive. It left to complainant the entire day for the exercise of his privilege, and only restricted its exercise after a period when the corporate authorities deemed it necessary for good order and quiet that spirituous liquors should cease to be retailed."

What is said with reference to the business involved in that case applies to the conduct of any business which results in the disturbance of good order and quiet in the town during the nighttime. Nor is it material that this particular ordinance applies to calves only, and does not embrace other animals. For all that here appears, the town of Jonesboro may have other ordinances applying to other animals, but the ordinance is not subject to attack on the ground that it does not go further and have a more general application. However, the issue to be now determined is whether or not this ordinance is so indefinite in its terms that it is not susceptible of fair and proper enforcement. It is true that, in so far as possible, ordinances should be "certain in their application and operation, and their execution not left to the caprice of those whose duty it is to enforce them." *Jones* v. *Nashville*, 109 Tenn., 558, 72 S. W., 986. There is no hard and fast rule determining whether or not any given ordinance is void for indefiniteness. The rule of reason must be applied to every case as it arises. Wide latitude must be

left to the city authorities in the framing of city ordinances intended to protect health or preserve peace and order in communities.  It is a matter of impossibility always accurately to define the offense in such precise terms as to relieve the ordinance wholly from any charge of indefiniteness and deprive the enforcing officers of all discretionary latitude.  Common illustrations of ordinances of this character might be given.  In dealing with the subject of cruelty to animals, it is common to provide broadly that any person who shall inhumanly, unnecessarily, or cruelly beat or injure, or otherwise abuse, any dumb animal, shall be guilty of a misdemeanor, or that it shall be unlawful for any person to overload any vehicle.  Obviously the determination of what constitutes cruelty under such ordinances is left to the discretion and decision of the trial authorities.  Again, ordinances are quite generally enacted and enforced making it unlawful for persons to loiter about and upon railroad tracks within a city. It is always a matter of discretion to be used by the authorities as to what constitutes loitering as distinguished from legitimate and proper presence.  What are known as the "keep moving" ordinances, common to large municipalities, come within this more or less, but generally recognized as valid, indefinite class.  In many of the health protection ordinances the provisions are general and in the sense indicated susceptible to some charge of indefiniteness.

The municipal codes of all of our cities contain numerous illustrations of ordinances enacted for the purpose of preserving public peace, which necessarily leave to the enforcing officials a very large discretion, such as those

making it an offense to disturb public worship, or schools, to use abusive or insulting language in public, and, broadly, to conduct one's self in a "disorderly" manner in any public place to the annoyance of others. Such ordinances are all subject in a sense to the general charge of indefiniteness, but their validity is not questioned on this account. What constitutes disorderly conduct is always a question of fact under the particular circumstances. The particular ordinance under discussion is directed at the offense of bringing the animals described into the corporate limits and keeping them overnight in such a manner as that they disturb the peace and quiet of the community. If they can be brought in and kept in such condition and under such supervision and control as that they do not disturb the community by their noises, no offense arises under the ordinance. No disorder has resulted and the ordinance has not been violated. This question of fact would be the one to be determined in every case presented.

In this connection mention may be made of certain familiar statutes, the validity of which our courts have again and again recognized and enforced, which leave to the enforcing authorities just that character of discretion which is reserved to the authorities by the alleged indefinite terms of the ordinance under discussion.

"If any person willfully disturb or disquiet any assemblage of persons met for religious worship, or for educational or literary purposes, . . . by noise, profane discourse, rude or indecent behavior, or any other act, at or near the place of meeting, he shall be fined," etc. Shannon's Code, section 6776.

Whether or not the offending persons "disturb" such a gathering is left open for the determination of the proper

authorities, just as under the present ordinance. The court will determine whether or not the calves have been kept in such a way as to "disturb" the residents of the town, just as whether or not any person has conducted himself in such a way as to "disturb" an assemblage.

Again, by section 2857, Shannon's Code, it is made an offense to "overdrive, overload," etc., any animal, and it is left to the discretion of the authorities to determine whether or not, on the facts of any given case, the offense has been committed. With respect to all such laws there is some degree of indefiniteness in defining the offense but these laws are nevertheless valid and enforceable.

Both statutes and ordinances are in force in some of the States and cities of the country regulating the speed of automobiles without fixing a limit of certain miles per hour, but providing in general terms that the driver shall not move at such a speed as under the condition will endanger life, and the test of violation is one of fact as to whether or not the defendant was driving recklessly.

The principle involved is interestingly and convincingly discussed in *State* v. *Schaeffer*, 96 Ohio St., 215, 117 N. E., 220, L. R. A., 1918B, 945, Ann. Cas., 1918E, 1137, in which case a statute regulating speed had been attacked for indefiniteness and uncertainty in its terms. Says the court:

"The legislature, however, in this instance, saw fit to fix no definite rate of speed for the car, except to require that the car should not be operated at a speed 'greater than is reasonable or proper, having regard for width, traffic, use and the general and usual rules of such road or highway, or so as to endanger the property, life or limb of

any person.' In short, the legislature wrote into the statute what has become known as the 'rule of reason' ever since the *Standard Oil Case,* 221 U. S., 1, 31 Sup. Ct., 502, 55 L. Ed., 619, 34 L. R. A. (N. S.), 834, Ann. Cas., 1912D, 734, and *Tobacco Trust Case,* 221 U. S., 107, 31 Sup Ct., 632, 55 L. Ed. 663, were decided by the supreme court of the United States. In those cases the supreme court of the United States read into the statute the so-called 'rule of reason,' holding that the Anti-Trust Act really was not a denial of all restraint of trade, but only a denial of unreasonable restraint of trade. It would hardly be suggested that the supreme court of the United States read into the statute something that made the statute unconstitutional, or read into the statute something that made it so indefinite and uncertain that it was incapable of advising the public as to what was or was not an offense under it, or that made the statute practically unenforceable. And yet, by parity of reason, it is claimed in this case that the legislature, which wrote into the statute the same 'rule of reason,' thereby in effect nullified such statute, because of the indefiniteness and uncertainty of its terms. The contention is not sound. The suggestion that juries on the same state of facts may hold one way in one county, and another way in another county, indeed, that in the same county, upon the same state of facts, one jury may hold one way and another hold another way, is no argument against this contention. That is inevitable under any system of jurisprudence on any set of facts involved in a criminal transaction. Courts differ in their judgment; juries differ in their judgment; but that is no reason for the abolition of either, or for denying them

jurisdiction sufficient to enforce the administration of statutes like the one in question.  In our whole criminal procedure, even in capital and the most atrocious cases, where a man's life and liberty for life are invoved, it is made the special province and duty of juries to determine what is 'reasonable,' and whether or not there is a 'reasonable' doubt of the defendant's guilt.  Of course, that is a conclusion—almost incapable of precise and specific definition.  What one jury might hold to be a reasonable doubt, another jury might hold the contrary; and still there is no way other than to leave the question to the jury to determine what is and what is not a 'reasonable doubt.' "

See, also, *State* v. *Goldstone,* 144 Minn., 405, 175 N. W., 892; *Schultz* v. *State,* 89 Neb., 34, 130 N. W., 972, 33 L. R. A. (N. S.), 403, Ann. Cas., 1912C, 495; *State* v. *Smith,* 29 R. I., 245, 69 Atl., 1061.

The objection suggested that the ordinance applies, by its terms, only, to calves kept for the purpose of sale or shipment, we do not regard as having force.  The conditions sought to be met by this ordinance evidently arose out of the practice defined in the ordinance, that is, the custom of bringing these animals into the town limits and keeping them overnight for sale or shipment.  This was the evil aimed at.  It was out of this custom that the offense had arisen and become common.  This limitation, if it may be so termed, does not give rise to any indefiniteness in the matter of enforcement, but rather serves to define the practice and operation of the ordinance.

Applying the rule of construction laid down in the opening of this opinion, and taking a liberal view of this ordinance, we are of opinion that it is susceptible of rea-

sonable enforcement. The necessity for definiteness is founded upon the principle that one may not be lawfully punished for a violation of a statute or ordinance which does not by its terms give notice of the nature of the offense. It must be "certain and definite, so that the average man may with due care, after reading the same, understand whether he will incur a penalty for his actions or not. Otherwise it is void for uncertainty." 19 R. C. L., 810.

The ordinance before us is sufficiently certain in the definition of the offense, and also with regard to the penalty. Any average man reading it will readily understand that he commits an offense under this ordinance whenever he keeps, or allows to be kept, at night, on his premises within the corporate limits, calves for the purpose of sale or shipment without so handling or controlling them as to keep them from disturbing the residents of the community by the noises which calves thus kept, in places strange to them and removed from their accustomed surroundings, are wont to make.

The authority to regulate nuisances of this character by ordinance being unquestioned, and the reasonableness of a prohibition by ordinance of the maintenance of such a nuisance, when properly defined, being likewise beyond question, and this court being of opinion that the ordinance before us, while lacking in that precision of definition which is to be desired, is nevertheless sufficiently certain in its statement of the offense aimed at to put the average man upon notice of the thing forbidden, we are constrained to hold the ordinance valid, and the judgment of the court of civil appeals is reversed, and the case remanded.