STATE, Respondent, vs. MUELLER, Appellant.

*January 10—February 4, 1936.*

*Lilian M. Kohlmetz,* attorney, and *Mary D. Waal* of counsel, both of Milwaukee, for the appellant.

For the respondent there was a brief by *Salen & Brenner,* and oral argument by *Martin A. McLaughlin, Jr.,* all of Waukesha.

FRITZ, J.   The state, as respondent, moves to dismiss this appeal on the ground that no bill of exceptions was settled until September 26, 1935, which was nine months after judgment was rendered, on December 20, 1934.   Upon the service of a proposed bill of exceptions on July 19, 1935, respondent's counsel promptly objected to the settlement thereof because more than ninety days had elapsed since

judgment was rendered, and no extension of the time for settling the bill had been granted. The court overruled those objections and settled and signed the bill.

Respondent's motion to dismiss the appeal must be denied. Sec. 270.47, Stats., requires that service of a proposed bill of exceptions for an appeal from a judgment must be made within ninety days after service of a written notice of the entry of judgment. Service of such a notice is necessary in order to fix the time for commencement of that period of ninety days. As no such notice was ever served in the case at bar, no time was ever fixed for the commencement of that period of ninety days; and, as it had not even commenced to run, it could not have expired when the proposed bill of exceptions was served on July 19, 1935.

The town ordinance which appellant violated became effective November 9, 1934. It prohibited the keeping of "more than two dogs over the age of three months within any residential district within the town of Muskego . . . as hereinafter defined." And it defined a residential district within the meaning of the ordinance as any part of the town "on which two or more residences are occupied within a distance of one thousand feet of each other." It also provided that any dogs kept "shall be cared for, maintained and handled in a manner which shall be sanitary and to prevent noises, barking, fighting or howling at night so as to disturb the peace and quiet of the neighborhood;" and that they "shall not be permitted to run at large and during the breeding season shall be kept closely confined."

The evidence clearly establishes that the appellant violated the ordinance on November 24, 1934, by keeping, within the town of Muskego, seven dogs over three months old in a residential district within the meaning of the ordinance, in that there were three occupied residences within fifty feet of each other. The evidence likewise established that the dogs

frequently barked and howled at night, and that appellant's premises were filthy and unsanitary because of dog dirt, etc.

Appellant contends, however, that the ordinance was void because it was in contravention of sec. 174.05 (1), Stats., which provides that "every owner of a dog more than six months of age on January first of any year . . . shall annually, before the first day of February, obtain a license therefor, and shall pay for such license one dollar. . . ." In that connection, appellant proved that, before the enactment of the ordinance, licenses to keep seven dogs over six months old, within the town during the year 1934, had been issued to him by the town treasurer. Appellant claims that, under and by reason of sec. 174.05 (1), Stats., and the seven licenses issued to him thereunder, he was entitled to keep seven dogs, over six months of age, up to December 31, 1934; and that, therefore, the town could not make such keeping illegal by the enactment of an ordinance prohibiting the keeping of more than two dogs over three months old. Appellant relies upon the rule that where the state has entered the field of regulation, municipalities may not make regulations inconsistent therewith. *Baraboo v. Dwyer*, 166 Wis. 372, 165 N. W. 297; *Hack v. City of Mineral Point*, 203 Wis. 215, 233 N. W. 82.

That rule is not applicable in the case at bar. In the first place, sec. 174.05 (1), Stats., does not create or confer the right to keep dogs. Its purpose and effect is to prohibit the keeping of dogs without having the license required thereby. But even more fatal to appellant's contention is the fact that by reason of the provisions in sec. 174.12 (3), Stats., neither sec. 174.05 (1), Stats., nor any other provision in ch. 174, Stats. (entitled "Dogs"), is to be construed as limiting in any way the existing right or authority of any municipality to pass ordinances governing the keeping and regulating of dogs. Thus, it is provided in sec. 174.12 (3), Stats., that—

"The provisions of chapter 174 of the statutes shall not in any way limit the existing right or authority of any town,

village or city to pass ordinances for the keeping and regulating of dogs, or repeal or annul any existing statute or ordinance or local regulation governing the keeping and regulating of dogs; but on and after July 1, 1920, no town, village or city shall pass any ordinance for the licensing of dogs, and all town, village or city ordinances and local regulations licensing dogs then in force shall be null and void."

Manifestly, the only effect of the limitation in the last clause of that quotation is to prohibit the passage of ordinances, after July 1, 1920, for the licensing of dogs, and to declare void all municipal licensing ordinances which were then in force.

Likewise, in view of that provision in sec. 174.12 (3), Stats., that nothing in ch. 174, Stats., shall in any way limit the existing right or authority of any town, village, or city to pass ordinances for the keeping or regulating of dogs, no such restrictive consequence or effect can be ascribed to the provision in sec. 174.10 (3), Stats., that—

"Any dog found or discovered off the premises of its owner between sunset and sunrise and unaccompanied by its owner or some person in control of it shall be considered an unlicensed dog and a private nuisance and may be seized, restrained, impounded and disposed of as provided by this section by any one during said time and before it returns to the control or premises of its owner."

The legislative declaration, that a dog found under such conditions shall be considered a private nuisance, does not preclude municipalities from prohibiting the keeping of dogs under other conditions so detrimental to public health, safety, and welfare as to likewise constitute nuisances.

Appellant also contends that the ordinance is unreasonable, and therefore invalid, because in defining a residential district, in which the keeping of more than two dogs over three months of age is prohibited, the ordinance includes a district in which two or more occupied residences are as far apart as one thousand feet. In respect to that contention, it must be noted at the outset, that, as the ordinance is on a sub-

ject as to which the town board had authority to legislate, all presumptions are in favor of the validity thereof, and that the court is not to substitute its judgment for the legislative discretion of the town board acting in the exercise of its police powers. As we said in *State ex rel. Newman v. Pagels,* 212 Wis. 475, 479, 250 N. W. 430:

". . . Under well-established rules, where a municipal body enacts regulations pursuant to authority expressly granted, all presumptions are in favor of its validity, and any person attacking it must make the fact of its invalidity clearly appear. . . ."

". . . The validity of an ordinance becomes a judicial question in a given situation solely for the purpose of determining whether legislative action under the power delegated to the common council passed the boundaries of its limitations or exceeded the boundaries of reason. The very fact of delegation of this power to common councils implies a field of legislative discretion within which its acts are not subject to judicial review. It is only when the bounds of that field are clearly exceeded that courts will deny validity to such an ordinance." *La Crosse v. Elbertson,* 205 Wis. 207, 211, 237 N. W. 99.

Furthermore, it is generally recognized that—

". . . The police power of the state has been used to regulate and control property in dogs to a greater extent than property in any other class of domestic animals. It is a peculiar kind of property. Such animals increase rapidly; they are usually of but little expense to their owners when allowed to run at large; and in a domestic state they retain to a considerable degree their wild, mischievous, and ferocious natures. . . ." *Jenkins v. Ballantyne,* 8 Utah, 245, 30 Pac. 760, 16 L. R. A. 689, 690.

As was said in *Blair v. Forehand,* 100 Mass. 136, 140, 97 Am. Dec. 82, in considering legislation regulating the keeping of dogs:

"There is no kind of property over which the exercise of this power [police] is more frequent, or more necessary, than that which is the subject of the present actions. In regard to

the ownership of live animals, the law has long made a distinction between dogs and cats, and other domestic quadrupeds, growing out of the nature of the creatures and the purposes for which they are kept. . . . "

See also *City of Carthage v. Rhodes,* 101 Mo. 175, 14 S. W. 181, 9 L. R. A. 352, 353; *Fincher v. Collum,* 2 Ga. App. 740, 59 S. E. 22, 23; *Sentell v. New Orleans & C. R. Co.* 166 U. S. 698, 17 Sup. Ct. 693, 41 L. Ed. 1169; *People ex rel. Knoblauch v. Warden of City Prison,* 89 Misc. 243, 153 N. Y. Supp. 463, 466; *Hofer v. Carson,* 102 Or. 545, 203 Pac. 323, 325, 326; *Independence v. Trouvalle,* 15 Kan. 70; *Julienne v. Jackson,* 69 Miss. 34, 10 So. 43; *Van Horn v. People,* 46 Mich. 183, 185, 9 N. W. 246; *Tenney v. Lenz,* 16 Wis. 566, 567; 43 C. J. p. 319, § 339.

It has become the established rule in regard to regulations restricting the number of dogs, as well as the number of other domestic animals, that may be kept in a residential district defined therein, so as to prevent such keeping in undue proximity to neighboring residences, that—

"In furtherance of the public health, security, and comfort of its inhabitants municipal corporations may regulate the keeping of animals within the corporate limits or within designated districts of the corporation. . . . The keeping of animals . . . within designated districts thereof may be prohibited when such keeping affects or disturbs the public health, public peace, public safety, or public decency; but only when it does so. In regulating the keeping of animals a municipal corporation may limit the number of particular animals that may be kept within the municipal limits or within designated districts thereof. . . ." 43 C. J. pp. 314, 315, § 333.

In *In re Mathews,* 191 Cal. 35, 214 Pac. 981, 983, 984, in sustaining a municipal ordinance which declared it to be unlawful for any person to keep or maintain any goat within fifty feet of any dwelling house other than that occupied by him, or more than two goats within one hundred feet, or more than four goats within three hundred feet, or more

than five goats within one thousand feet of any such dwelling, and which also declared it unlawful to keep or maintain any male goat exceeding the age of six months within the city limits, the court said:

"That the keeping of animals may be a proper subject of municipal regulation, and that by such regulation the number of animals which may be kept may be limited, does not admit of question. *In re Linehan, 72* Cal. 114, 13 Pac. 170. . . ." (p. 983.)

"It is a matter of common observation that the herding together of even the least offensive animals within a city may be conducive to noise, foul odors, and insect life, and may be a source of great annoyance and discomfort to persons residing in the vicinity. Assuming it to be a fact of which we may take judicial notice that female goats are, as claimed by petitioner, animals of high qualities, whose merits are underestimated by the public at large, still they might not be entirely free from all the characteristics which make other barnyard animals the proper subject of municipal regulation. We cannot say that when kept in numbers in a city they are so incapable of offending the senses and affecting the health and comfort of the residents, and, in the instance before us, are so unlikely to interfere with the public welfare, that they are beyond the power of regulation of a city government." (p. 984.)

In respect to a contention that the required distances between places where the goats could be kept were unreasonable and disproportionate, the court said:

". . . The ordinance may not be held invalid unless the distances are clearly unreasonable, the question of reasonableness being primarily one for the legislative body. . . . Many things might enter into such a regulation, for example, the greater difficulty of properly caring for a larger number of goats. . . . Such an ordinance might have the effect of prohibiting the keeping of that number within the limits of the city, and certainly would within any but a sparsely settled neighborhood. Such an objection is not tenable, for the city has the right to suppress as well as to regulate objectionable conditions in the community. . . ." (p. 984.)

That decision was followed in *Miller v. City of Arcadia,* 121 Cal. App. 660, 9 Pac. (2d) 587—a case involving an ordinance regulating the keeping of dogs by provisions similar to those in the case at bar—and the principles recognized and applied in both of those cases, and many of the reasons stated therein for sustaining the ordinances, are equally applicable to the ordinance involved herein, and well warrant the conclusion that enactment thereof was not an unreasonable exercise of the power vested in the town to pass ordinances for the keeping and regulating of dogs within the town.

*By the Court.*—Judgment affirmed.