**HAHN, Plaintiff, v. BROOKLYN (City), Defendant.**

Common Pleas Court, Cuyahoga County.

No. 662398.    Decided February 20, 1958.

430

Henry L. Brover, Cleveland, for plaintiff.
Michael L. Hearns, Walter A. Savage, Cleveland, for defendant.

## OPINION

By J. J. P. CORRIGAN, J.:

Plaintiff, a resident of the City of Brooklyn, has instituted this action to have a declaratory judgment entered determining that a certain Ordinance designated as Ordinance No. 1945-17, passed on July 23, 1945, is unconstitutional and void and of no force and effect.

Ordinance No. 1945-17 reads as follows:

"AN ORDINANCE PROHIBITING THE RAISING, KEEPING, MAINTAINING, OR HARBORING OF PIGEONS, CHICKENS, DUCKS, GEESE, TURKEYS, GUINEA HENS, RABBITS, MICE, PIGS, SHEEP, COWS, HORSES, GOATS, OR ANY BIRDS, FOWL, RODENTS, OR ANIMALS DETRIMENTAL TO PUBLIC HEALTH AND GENERAL WELFARE ON ANY PARCEL, LOT, OR SUBLOT WITHIN THE VILLAGE LIMITS WHICH PARCEL, LOT, OR SUBLOT HAS LESS THAN 8,000 SQUARE FEET OF AREA.

"WHEREAS, it is detrimental to health and general welfare of the public to permit the raising, keeping, maintaining, or harboring of any birds, fowl, rodents, or animals on a small parcel of land which cause or tend to cause a nuisance through the emission of noise or unwholesome odors;

"NOW, THEREFORE BE IT ORDAINED BY COUNCIL OF THE VILLAGE OF BROOKLYN, COUNTY OF CUYAHOGA, AND STATE OF OHIO:

"SECTION 1. That it shall be unlawful to raise, keep, maintain, or harbor pigeons, chickens, ducks, geese, turkeys, guinea hens, rabbits, mice, pigs, sheep, cows, horses, goats, or any other birds, fowl, rodents or animals detrimental to the public health and general welfare on any parcel, lot, or sublot within the village limits, which parcel, lot, or sublot has less than 8,000 square feet of area. Provided, however, that the keeping or harboring of a dog, cat, canary, parrot or any similar bird or animal which has always been customarily maintained or harbored as a pet shall be permissible on any lot of any size within the municipality.

"SECTION 2. That on any parcel, lot, or sublot containing not less than 8,000 square feet of area and not more than 5 acres, a poultry house shall be permissible provided same does not contain more than 240 square feet of area; and said poultry house may be used for raising, keeping, maintaining, or harboring chickens, ducks, or geese. Provided,

however, that on any parcel having an area of less than 5 acres it shall be unlawful to raise, keep, maintain or harbor any domestic or wild animal except a domestic pet as set forth in Section 1 hereof.

"SECTION 3. On any lot or parcel containing 5 acres or more of area, there shall be no restriction or limitation on the raising, keeping, maintaining, or harboring of any birds, fowl, or domestic animal.

"SECTION 4. Whoever violates any section of this ordinance shall upon conviction be fined not less than $5.00 nor more than $49.00 for each offense; and each day's violation shall constitute a separate offense.

"SECTION 5. That this ordinance is hereby declared to be an emergency measure necessary for the immediate preservation of the public health, welfare and safety of the Village, and shall, therefore, go into immediate effect upon its passage."

Plaintiff urges that the alleged nullity of the ordinance is predicated upon the contention—

(1) that the ordinance is an arbitrary, unreasonable, burdensome, confiscatory exercise of the police power and beyond the legislative power and control of said City of Brooklyn;

(2) it is violative of the provisions of Section 1, Article 14, of the United States Constitution; and

(3) it is in contravention of plaintiff's rights under **Section 1, Article 1, Ohio Constitution.**

The plaintiff's petition alleges that he has for many years been interested in and occupied with the training of American racing pigeons under the auspices of the American Racing Pigeon Union with registration of such birds for wartime use in defense of the United States. Plaintiff alleges that he occupies a parcel of land in Brooklyn aproximately 7,000 square feet in area, and that the purpose and plan of said ordinance has the effect of preventing plaintiff from keeping, maintaining or harboring more than one pigeon on his property. He further alleges he is prevented by said ordinance from making lawful use of his real estate; that he is deprived of his property without due process of law and that he is not being afforded the equal protection of the laws; that he is stopped from enjoying, defending and protecting his property rights in said land.

Plaintiff further alleges that the defendant through its agents and officers has sought to enforce said ordinance by arrests, warnings, and other police activity for which defendant has no adequate remedy at law.

Plaintiff further alleges that the parties hereto are in dispute as to the validity of said ordinance and the rights of plaintiff as to the use of his said property and that a declaratory judgment terminates said controversy.

Answer of defendant admits corporate capacity, the passage of the ordinance in question and the residence of plaintiff. All other allegations of the petition are denied.

In reviewing the history of this general type of legislation, we find that as early as 1867 municipalities were, under the exercise of police power, regulating the right to keep and maintain animals.

However, just to say that something is detrimental to health and general welfare of the public is not sufficient to make it so. Thus a mu-

432

nicipal corporation cannot make something illegal merely by having their council declare it to be detrimental to health and welfare anymore than they could make a business a nuisance merely by declaring it to be such, Painter v. Town of Forest Acres, 97 S. E. 2d 71 (Supreme Court of South Carolina) (1951). But a city council is presumed to have good reasons for passing an ordinance and a court is not authorized to subject its judgment for that of the council so long as its ordinances are passed under a valid exercise of the powers granted it, Mayer v. Ames, 5 Oh St 402 (1937).

An early example of the regulation of animals is found in Commonwealth v. Patch, 97 Mass., 221 (1867), which held that an ordinance prohibiting of the keeping of swine within certain localities in the city was valid. Another example is found in the case of Hoops v. The Village of Spona, 55 Ill. App., 94, (1894). There the village had been given the right under State statute to declare what was a nuisance. Under that authority the court found the village had legally passed an ordinance declaring the keeping of a stallion for serving within one-half mile of its public square a nuisance.

Since 1900, New York City, under its Sanitary Code, has by varying means regulated live chickens or other fowl. The regulations have required that they shall not be brought into or kept in any yard or other place within the city's built-up portion without a permit from the Board of Health. These provisions have been held to be legal. See People v. Davis, 79 N. Y. S., 747, 78 App. Div., 570 (1903).

An order regulating hogs to be kept one mile from the Court House was held to be valid in the case of Ex Parte Glass, 49 Tex. Cr. R., 87, 90 S. W., 1108 (1905). The court held that this ordinance was not unreasonable as it permitted the keeping of hogs outside the one-mile limit.

An ordinance regulating the keeping and feeding of cows in the city of Chicago is valid, as clearly within the exercise of police power granted by the State to the City Council, see Ringelstein v. City of Chicago, 128 Ill. App., 483 (1906).

Thus the regulating of stock, dogs and all other animals starts early in the development of urban centers. Often it was merely a requirement forbidding the running of stock at large within the corporate limits (held to be valid, Brown v. Town of Williamsburg, 87 S. E., 959, 171 N. C., 57): or the distance a stable could be constructed from another's land (held to be valid, State v. Bass, 171 N. C., 780, 87 S. E., 972); or requiring the keeping of stock in pens (held to be valid exercise of police power, Ex Parte Broussard, 74 Tex. Cr. R., 333, 169 S. W., 660).

In 1923 the keeping of animals was firmly established as a proper subject of municipal police regulations, and it was held that a municipality could limit the number of animals which could be kept; see Ex Parte Mathews, 191 Cal., 35, 214 P., 981 (1923). But, whether it was dogs (Robbenson v. Gibson, 162 P., 1120, 62 Okl., 306); calves (Town of Jonesborough v. Kincheloe, 148 Tenn., 688, 257 S. W., 418); goats (Ex Parte Mathews, 58 Cal. App., 649, 209 P., 220) or fowl (Merrill v. City of Van Buren, 125 Ark., 248, 188 S. W., 537); the keeping of all animals was being regulated in one manner or another.

By 1946 the questions relative to the keeping of animals were becoming more encroached with legal differentiations and definitions. Thus in the case of Brown v. Klein, 133 N. J. L., 533, 45 A. (2d) 319 (1946) the court became involved in a legal argument over teminology, but, went on to find that municipal health ordinances were not unreasonable in that the keeping of pigs was permitted in one locality and forbidden in others, or confiscatory in that the minimum number of pigs that might be kept was limited to seven in the absence of a standard by which to determine what was reasonable, fair and proper on the premises.

In 1955 the District Court of Appeals in the Case of The People v. Johnson, 129 Cal. A., 2d 1, 277 P., 2d 45 (1955), reviewed some of the cases cited above and found that the keeping of animals may be a proper subject of municipal regulation and that by such regulation the number of animals which may be kept can be limited. There the question involved a zoning ordinance which prohibited the owner of land from having more than five hogs on land zoned for industrial use. The court held that ordinances such as this would be enforced by the courts and that a determination of when and what police regulations are essential is primarily for the city's legislative body, which is clothed with police power by grant from the Constitution, and its determination should not be set aside by the courts unless the regulation clearly has no relation to the protection of health, comfort or well being of the community. The court went on to hold that the determination by the Council should only be set aside when it clearly invades personal property or property rights under the guise of police regulation.

This reasoning has been followed by the Ohio Supreme Court in the case of **Cincinnati v. Correll, 141 Oh St 535 (1943)**, the first syllabus holds:

"1. **Section 3, Article XVIII, Ohio Constitution,** grants authority to municipalities to adopt and enforce within their limits such local police regulations as are not in conflict with general laws. A municipal ordinance passed under such authority, to be valid, must not be arbitrary, discriminatory, capricious or unreasonable and must bear a real and substantial relation to the health, safety, morals or general welfare of the public."

California courts have been very strict in upholding municipal regulations pertaining to animals. Their latest pronouncement on this subject is found in Finstein v. County of San Bernardino, 305 P., 2d 266 (1957). There in interpreting a zoning ordinance which required fowl to be kept 40 feet from another dwelling the court held:

"5 MUNICIPAL CORPORATIONS 592 (1)

"An activity which is permitted by law may be constitutionally prohibited in connection with zoning ordinances, because of the subsequent development of adjacent property.

"6 CONSTITUTIONAL LAW 278 (4)

"Though facilities for keeping poultry were constructed in compliance with county health ordinance, then in effect, forbidding the keeping of fowl within 40 feet of any dwelling other than that of owner, sub-

sequently requiring owner to remove his poultry in compliance with such ordinance 40 feet from a dwelling meantime erected on adjoining property would not unconstitutionally deprive owner of the use of his property."

In, State v. Mueller, 220 Wis., 435, 265 N. W., 103 (1936), the court held that an ordinance limiting the number of dogs over three months of age was valid and went on in dicta to quote from Corpus Juris as follows:

"In furtherance of the public health, security and comfort of its inhabitants municipal corporations may regulate the keeping of animals within the corporate limits, or within designated districts of the corporation * * * the keeping of animals * * * within designated districts thereof, may be prohibited when such keeping affects or disturbs the public health, public peace, public safety, or public decency; but only when it does so. In regulating the keeping of animals a municipal corporation may limit the number of particular animals that may be kept within the municipal limits or within designated districts thereof. * * *"

In the case of Shaeffler v. City of Park Hills, Ky., 279 S. W. 2d 21 (1955), the court held that an ordinance prohibiting the keeping or harboring of live stock, fowl and animals within corporate limits was not arbitrary or unreasonable as enforced against the plaintiff, who was in the business of raising not less than five or more than twenty chickens at his residence within the city. The court held:

"A city has a broad discretion in the enactment of laws to preserve and promote the health, morals, security and general welfare of its citizens. Sufficient grounds exist for the enactment of an ordinance of this nature if it has substantial relation to a legitimate object in the suppression of the conditions which the city authorities deem detrimental to the public good. Nourse v. City of Russellville, 257 Ky., 525, 78 S. W., 2d 761. The keeping of poultry is a proper subject of regulation to protect the public health and welfare. 2 Am. Jur., Animals, Section 30."

Municipal legislation limiting the keeping of live stock to a specific district or districts within a municipality has been uniformly upheld, see 32 A. L. R., 1372, pg. 1375.

In the case of Springdale v. Chandler, 257 S. W., 2d 934 (1953) the court in discussing an ordinance that provided no livestock, poultry, etc., shall be harbored within 150 feet of a dwelling house held:

"Likewise a city may regulate the keeping of chickens, but, whether such regulation is arbitrary or unjust depends upon the evidence. It might be arbitrary to prevent the keeping of a few hens at a place where it would not be arbitrary or unjust to prevent the keeping of thousands of chickens in that case the ordinance was found to be invalid as it required the protest of two or more neighbors before the person keeping such livestock could be prohibited."

To that qualification the court held:

"a city ordinance which allows an arbitrary discrimination is unconstitutional and void."

Actually this was an improper delegation of legislative authority.

There have been very few cases in the Federal Courts questioning the constitutionality of legislation regulating animals and poultry. In the case of Bratley v. Nelson, 67 F. Supp., 272 (1946), the court held:

"Federal District Court withheld any action, in suit by citizens against city and city officials to have declared void as in violation of the 14th Amendment a city ordinance regulating the keeping of poultry, fowl, and grazing animals within the city limits, at least, until state courts had passed on the constitutionality of the ordinance. U. S. C. A. Const. Amend. 14."

The court said this was done because:

"Congress has adopted the policy of leaving to the courts of the States and Municipalities the trials of criminal violations of State Laws and Municipal Ordinances. Federal Courts of Equity, in the exercise of their sound discretion, conform to that policy by refusing to interfere with proceedings in the State and Municipal Courts, except where unusual circumstances clearly call for equitable relief."

Since the court did not interfere in this instance although it was stipulated that there was an arrest for violating an ordinance requiring poultry and fowl to be kept more than 25 feet from any human dwelling, it must be assumed that the court felt the enforcement of the ordinance by the arrest would not cause irreparable injury which would be clear and imminent to the Court, see Watson v. Buck, 313 U. S., 387, 61 S. Ct., 962, 85 L. Ed., 146 (1941).

In the case of the City of Arkadelphia v. Clark, 52 Ark., 23, 11 S. W., 957 (1889), the court declared invalid an ordinance declaring bees to be a nuisance. Their reason was:

"Neither the keeping, owning, nor raising of bees is in itself a nuisance. Bees may become a nuisance in a city, but whether they are so or not is a question to be judicially determined in each case. The ordinance under consideration undertakes to make each of the acts named a nuisance without regard to the fact whether it is so or not, or whether bees in general have become a nuisance in the city. It is therefore too broad, and is invalid."

At a later date, in a different jurisdiction and under different circumstances, the Court of Appeals for California in Ex Parte Ellis, 25 Cal. App., 2d 99, 76 P., 2d 516 (1938), decided the raising of bees could be regulated and held:

"The tests of validity in such cases are: Does the ordinance bear a reasonable relation to the public health, morals, safety or general welfare; have the districts been created according to a fair and rational plan? We are of the opinion that the ordinance successfully meets these tests."

The court went on to find the ordinance not to be discriminatory even though the districts where the bees could be kept contained some small lots in populous places by holding:

"An ordinance delimiting a district in which bees could be kept and prohibiting the keeping of bees outside the district was valid where districts were created under a general comprehensive plan which sought to exclude keeping of bees in thickly populated areas and to permit keeping of bees in thinly populated areas, notwithstanding that district in which bees were prohibited contained some ranch land and mountainous regions suitable for bee culture and that district in which bees

were allowed contained closely built-up residential and business districts unsuitable for bee culture."

We can conclude then that from as early as 1867 right down to 1958 the legislative bodies of various local governments have been regulating the keeping of animals and fowl, that such regulations have often been questioned in the courts, but that the courts have uniformly upheld the legislation unless it was found to be arbitrary, unjust, or an invalid exercise of police power, by being discriminatory or by regulating as a nuisance that which was not a nuisance (per se).

The cases discussing the regulating of pigeons are mostly confined to the Courts of New York.

The earliest reported cases regulating pigeons is Barkmann v. Town of Hempstead, 49 N. Y. S., 2d 362 (1944), affirmed in 294 N. Y., 805, 62 N. E., 2d 238 (1945).

In that case the Town of Hempstead passed a zoning ordinance prohibiting the use of any structure for the harboring of pigeons. The plaintiff resided in a rural section of the town and the premises were surrounded by woods and farmlands. There were no sidewalks or crosswalks within 1500 feet. To the south of plaintiff's premises there was an outdoor privy and horse stable.

The trial court held the ordinance to be invalid as unreasonable. The Appellate Court reversed, holding that **"to what extent pigeons are a nuisance in a particular area is, in the first instance, a legislative matter."** The highest court affirmed the Appellate Court.

The pigeons were harbored merely as a pastime. The court felt that depriving the land owner of this pastime would not substantially deprive him of his property rights in the use of the premises, which were otherwise undisturbed and unimpaired.

In the case of Kraushaar v. Zion, 63 N. Y. S., 2d 359 (1946), the Village of Lawrence, New York, passed an ordinance which prohibited the keeping and harboring of pigeons, roosters, turkeys or guinea fowl within the Village of Lawrence. The plaintiff brought an action in declaratory judgment asking the court to find the ordinance void as it was not enacted pursuant to a proper exercise of the police power since the acts prohibited would not constitute a nuisance. The plaintiff had asked for relief by injunction and for the declaratory judgment. The court granted her injunction pending the trial but refused to grant the declaratory judgment on the pleadings. The court held that although the plaintiff said her pigeons were not a threat, to peace, welfare or health of the community that what is and what is not a nuisance is often times purely a matter of relativity. The court cited Village of Euclid, Ohio v. Ambler Realty Co., 272 U. S., 365, and the statement therein at page 388 which says—

"A nuisance may be merely a right thing in the wrong place, like a pig in a parlor instead of the barnyard."

The plaintiff complained that the ordinance did not regulate the keeping of pigeons, but, prohibited their keeping absolutely. The court held that when an ordinance is passed there is a presumption that it is reasonable and just, and the judicial power to invalidate it can be

exercised when from its inherent character or from the evidence showing its unreasonableness it is demonstrated to be otherwise.

No later written opinion in the latter case was found so it is impossible to determine whether in the trial in chief the court found the ordinance, from the evidence adduced, to be invalid. The court did show considerable concern over the validity of this ordinance and felt that on the trial the conditions in the community which required a sweeping enactment which prohibited the keeping of pigeons, no matter how or where they are kept and irrespective of whether or not they were in fact a nuisance, would be a matter of evidence.

In the case of Hoffman v. Murdock, 56 N. Y. S., 2d 753 (1945), the court held that the Board of Standards and Appeals of New York City was without power to restrict the number of pigeons the partitioner could keep on the roof of his two-family residence, where the partitioner did not keep the pigeons as a business enterprise, but merely as a pastime. The court arrived at this conclusion upon the finding that there was no law which prohibited his keeping pigeons as a hobby and went on to hold that until the legislature had spoken he could keep his pigeon coop wherever he desired.

In this opinion the court pointed out that although the pigeons were kept as a hobby the petitioner was making a considerable contribution to the war effort by making donations of the pigeons to the United States Army Signal Corps.

In the case of Hayward v. Samuel, 47 A., 2d 251 (1946), the Supreme Court of Pennsylvania held that the Board of Health of Philadelphia could find that pigeons constituted a nuisance to public health and could order their extermination. The pigeons referred to here were those which inhabited the downtown portion of the city and were not kept by any individual.

The case of People v. Miller, 304 N. Y., 105, 106 N. E., 2d 34 (1952), has become a leading case in the field of zoning. The court held that the harboring of pigeons as a hobby does not amount to a vested right the deprivation of which would subsequently effect the property rights of the land owner in the use of his premises.

The defendant was convicted of the misdemeanor of harboring pigeons on his property. The defendant kept pigeons as a hobby and since 1945 harbored them on his property located in the town of North Hempstead. In 1947 the town adopted a zoning ordinance which prohibited the erection or maintenance of a structure for harboring pigeons, swine, goats, etc., except when authorized by the Board of Appeals.

The defendant was convicted of violating this ordinance and based his appeal on the premise that he had a pre-existing and therefore vested right to use the premises for harboring pigeons.

The court discussed the right to continue a non-conforming use and concluded that this right became vested because otherwise serious financial harm could come to a property owner if the enforcement of an ordinance would render valueless improvements, made during the period prior to the enactment of the ordinance. But, went on to hold, that this theory was inapplicable to the keeping of pigeons on the property for

438

recreational or amusement purposes as this use was merely an incidental use and not one giving rise to a vested right.

Our research has not uncovered any case in the reports concerned with the keeping of homing or racing pigeons as in our instant case. From the evidence before the Court the plaintiff has kept racing pigeons for over forty years. He is a member of the American Racing Pigeon Union, Inc., a national organization of more than 10,000 members engaged in the sport of raising and racing pigeons. This group maintained close liaison with the United States Signal Corps during World Wars I and II and donated thousands of homing pigeons to the Army for message carrying. The plaintiff is also a member of several local racing clubs.

The evidence disclosed that the plaintiff keeps about twenty to twenty-five racing pigeons at all times; that the pigeons are released for exercise flights of twenty minute periods twice a day, once in the early morning and the second about 5:00 P. M. in the afternoon; the birds leave the loft and fly in circles of several miles for the period and do not stop or roost at any other place except their own loft; on return from the exercise flights, the birds go immediately into the loft; the birds leave no droppings in flight; the droppings are left in the loft, and the loft, which is located over the garage is cleaned by the plaintiff twice a day, once in the morning and once in the evening; the lofts are inspected for cleanliness periodically by representatives of the local racing association; in the races, the birds are transported in trailers to points hundreds of miles away from Brooklyn and clocked and released to fly directly to the home loft; on a return there the bird enters the loft immediately and is again clocked; there are no noises emanating from the loft which is above a garage and there are no odors emitted from the loft; there is no vermin nor are there any rodents in the loft area; the testimony before the Court is ample and clear that the loft maintained by the plaintiff is sanitary and in no way can be considered in the nature of a nuisance.

The Court had the benefit of the testimony of a number of very impressive witnesses who were engaging in this sport themselves. The broad object of these persons is to improve the breed of homing pigeons; to advance the security, development and popularity of the sport of pigeon racing; to better the welfare of its members and to maintain a large number of highly bred, virile and tested racing pigeons to serve as a security arm of the country in times of war or other emergency. All of the testimony indicated that it was a clean, wholesome hobby engaged in by good, solid, respectable citizens.

Plaintiff even presented medical testimony which showed that the keeping and training of homing pigeons is not injurious to the health, morals or the safety of the people of the community. Neighbors of the plaintiff testified that they were not disturbed by the plaintiff's homing pigeons in any way and that the pigeons created no nuisance in the area.

The question this Court has to decide is whether this ordinance as it affects the plaintiff is in any way arbitrary, discriminating or unreasonable and does it bear a real and substantial relation to the health, safety, morals and general welfare of the people of the City of Brooklyn.

Whether such ordinance meets this test depends upon the evidence. In the light of all the evidence before the Court, the Court feels that this ordinance as it affects the maintaining and raising of homing pigeons by the plaintiff is unreasonable and arbitrary and has no real and substantial relation to the health, safety and general welfare of the citizens of the City of Brooklyn. The Court feels that the prohibition in this ordinance against the plaintiff is made without regard to the conditions and circumstances surrounding the plaintiff's hobby.

In the opinion of the Court from the evidence the maintaining and raising of homing or racing Pigeons is a wholesome, useful sport and this ordinance. insofar as it interferes with the plaintiff in pursuing or engaging in such hobby or sport is invalid because it is unreasonable and arbitrary and bears no real and substantial relation to the health, safety and general welfare of the citizens of Brooklyn. A journal entry will be drawn accordingly.