intent that it be uttered or published as true. Id. But proof of such delivery must be made upon· the trial in order to sustain the charge of making. Id. It is sufficient that the ·indictment charges that the defendent "made" the affidavit. Id.

Section 97 of Penal Code provides that any irregularities in the mode of administering oaths is no defense to the prosecution of that crime. People v. Williams, 92 Hun, 354 ; 71 S. R. 541 ; aff'd, 149 N. Y. 1.

It prescribes that the term "oath" includes an affirmation and every other mode authorized by law of attesting the truth of that which is stated. People v. Nolte, 19 Misc. 674 ; 78 S. R. 443 ; 44 S. 443. To make a valid oath, for the falsity of which perjury will lie, there must be, in some form, in the presence of an officer authorized to administer it, an unequivocal and present act by which the affiant consciously takes upon himself the obligation of an oath. Id. ; O'Reiley v. People, 86 N. Y. 161. An oath, administered by the clerk of the court, in open court and under the direction of the court, is an oath administered by the court. Id.

---

# Court of Appeals.

### March 16, 1897.

## PEOPLE v. BENJAMIN HAWKER.

1. PUBLIC HEALTH LAW—UNLAWFUL PRACTICE OF MEDICINE.
   Section 153, c. 661 of 1893, as amended by c. 398 of 1895, applies to persons who have been convicted of a felony before the passage of the act.

2. STATUTE—EX POST FACTO LAW.
   As to such persons, the statute is not *ex post facto* law, but is constitutional.

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, which reversed a judgment of the Court of General Sessions of the Peace for the city and county of New York convicting the defendant of a smidemeanor.

HAIGHT, J.—The defendant was indicted in the Court of General Sessions of the Peace for a misdemeanor, charging that on the 6th day of March in the year 1878 the defendant was convicted

in the Court of Sessions of Kings county of the crime of abortion, upon which he was sentenced to be imprisoned in the penitentiary for Kings county for the term of ten years. That afterwards and on the 22d day of February, 1896, at the city of New York, he did unlawfully practice medicine by examining, treating and prescribing for one Dora Hoenig against the form of the statute in such case made and provided. To this indictment he interposed a demurrer to the effect that the facts stated in the indictment did not constitute a crime, in that the statute alleged to have been violated is prospective in its application, or if it is not prospective in its application, it is null and void as being in violation of article 1, section 10, of the Constitution of the United States and of the fifth amendment to said Constitution, and also of article 1, sections 1 and 6, of the Constitution of the state of New York. The demurrer was overruled by the court and the defendant demanded a trial. A jury was then impanelled, and thereupon his counsel conceded all of the facts as stated in the indictment to be true. He then moved the court to advise the jury to acquit upon the grounds set forth in his demurrer, which was refused, and an exception taken. The case was then submitted to the jury upon the charge of the court, and a verdict of guilty was subsequently rendered, upon which the defendant was sentenced to pay a fine.

The statute under which the defendant was indicted was chapter 661 of the Laws of 1893, as amended by chapter 398 of the Laws of 1895, and is known as the Public Health Law. Section 140 provides that " No person shall practice medicine after September 1, 1891, unless previously registered and legally authorized, or unless licensed by the regents and registered as required by this article; nor shall any person practice medicine who has *ever* been convicted of a felony by any court, or whose authority to practice is suspended or revoked by the regents on recommendation of a state board. " Section 153, among other things, provides " That any person    *    *    *    who, after conviction of a felony, shall attempt to practice medicine, or shall so practice    *    *    *    shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not more than $250 or imprisonment for six months for the first offense, and on conviction of any subsequent offense, by a fine of not more than

$500 or imprisonment for not less than one year, or by both fine and imprisonment."

It is contended that this statute should be construed prospectively. Undoubtedly it has reference only to misdemeanors committed after the passage of the act, but as to the felony charged as the former offense, we think it has reference to those committed before as well as after the passage of the act. As we have shown, the provisions referred to are part of the Public Health Law of the state, which provides a system for the preservation of the public health and the practice of medicine, and its provisions, so far as possible, should be construed as in harmony with each other. Section 140 of the act relates to the qualifications of persons who shall be permitted to practice medicine, and prohibits all persons not so qualified from engaging in such practice, including those who have ever been convicted of a felony. Section 153 provides for the punishment that shall be inflicted upon those who violate the provisions of the law. If the provisions of section 153 stood alone unexplained there might be some basis for the contention that it was intended to relate only to felonies thereafter committed, but when it is read in connection with the provisions of section 140 it seems clear that such a construction was not intended, for that section expressly prohibits any person from practicing medicine " who has *ever* been convicted of a felony." The word " ever " to our minds clearly indicates the legislative intention to prohibit the practice of medicine on the part of any person who has been convicted of a felony either before or after the passage of the law.

Is the law in question violative of the provisions of the Constitution of the United States, which provides that no state shall pass any bill of attainder or *ex post facto* law ? ( Art. 1, § 10. ) We can hardly believe the claim to be serious that the provisions of the law constitute a bill of attainder. If such is the case, then every statute which provides for an additional punishment for the commission of a crime after a former conviction must fall within the condemnation of the Constitution. Bills of attainder have been abolished in this country upon the adoption of the Constitution of the United States, but little is known with reference to their peculiar characteristics. In England a bill of attainder

was understood to be " the stain or corruption of the blood of the criminal capitally condemned, " the effect of which was that the party attainted lost all inheritable quality, and could neither receive nor transmit any property or rights of inheritance. The bills were acts of Parliament relating to a certain specified person or persons usually named in the acts, in which they were convicted, sentenced and punished without a judicial trial, and generally without the presence of the accused or his counsel, or an opportunity to be heard, or to establish his innocence. ( Ex parte Garland, 4 Wall. 333, 387. ) It will thus readily be seen that the provisions of the Public Health Law have none of the characteristics of a bill of attainder.

A more serious question is presented with reference to the contention that the law is *ex post facto*. An *ex post facto* law as defined by Chase, Justice, in the case of Calder v, Bull ( 3 Dallas, 386 ), is one that punishes as a crime an act done before its passage, and which, when committed, was not punishable ; and an act that aggravates a crime or inflicts a greater punishment than the law annexed to it when committed ; or a law that alters the rules of evidence in order to convict offender. It is not contended that the law in question makes any change with reference to the felony of which the defendant was convicted, or that there has been any aggravation or change, with reference to the punishment provided therefor. What has been done is the creation of a new offense, a misdemeanor after a felony dependent upon acts thereafter committed in violation of the statute and providing a punishment for such misdemeanor. It is in the nature of providing punishment for a second or an additional offense, and it is claimed, with reference thereto, that it operates, to deprive the defendant, of his rights of property, of his right to earn a living by the practice of medicine, and that, by being deprived of this right, the effect is to aggravate his punishment for the felony. The difficulty, however, with this contention is, that it does not appear from the record in this case that he ever had any right to practice the profession of medicine, and that no presumption can be indulged in to that effect. The felony of which he was convicted was not based upon the charge that he was a physician or a practitioner of medicine. He was charged with having committed an abortion,

and upon this charge he was convicted. Whether he was a physician or not was entirely immaterial, so far as determining whether that crime had been committed. It does not now appear that he ever studied medicine a day in his life; that he ever received a diploma from any medical college or university; that he was ever registered or licensed to practice medicine, or that he ever did practice before the 22d day of February 1896, the day of the charge upon which the indictment in this case was founded. So that there is an entire absence of any evidence showing, or tending to show, that he was deprived of any rights of property, or of means of earning a livelihood, that he theretofore enjoyed and possessed.

One of the highest functions of government is the preservation of the public health. It was for this purpose that the law in question was enacted. Under it delicate and important duties are intrusted to physicians, involving skill, ability, learning and integrity. The Constitution provides that no person shall be deprived of life, liberty or property without due process of law, yet this provision of the organic law is made subordinate to that of paramount necessity, andt he rights secured thereby to the citizen must yield to that of the preservation of the public health. The property of a citizen may be seized and burned if, in the judgment of physicians, it is infected and liable to cause the spread of contagious disease. He may be certified into an insane asylum or carted away to a pest house, and there restrained and imprisoned if, in the judgment of the physician, such a restraint and detention is advisable, and under certain circumstances the physician, in his practice, may destroy life if, in his judgment, it be necessary to save another life. Aside from these important duties and privileges, the physician is admitted into the family circle. He is intrusted with the family secrets of physical ailments and defects. He is permitted to administer powerful drugs and poisons, and is intrusted with the care of the lives, health and welfare of its members. The patients, as well as the public, are deeply interested in having the person in whom such trust and confidence is reposed possess all the skill, ability, learning and integrity that is required for the proper and faithful discharge of the duties and trust reposed in him. The legislature, therefore, in the exercise of its discretion

under the police powers of the state, may, by act, impose reasonable conditions and requirements under which individuals may practice the profession of medicine, and to restrain and prohibit all persons not complying therewith from engaging in such practice. This power of the legislature was fully recognized in the Dent case by the Supreme Court of the United States ( 129 U. S. 114). In that case the statute required every practitioner of medicine to obtain a certificate from the state board of health that he was a graduate of a reputable medical college, in a school of medicine to which he belonged, or that he had practiced medicine in the state continuously for ten years prior to the passage of the act. Persons who continue to practice without such certificate were declared to be guilty of a misdemeanor.    Dent was a physician and had practiced his profession for five years.    He continued to practice after the time prescribed by the act.    He was indicted, tried and convicted, and that judgment on review was affirmed by our highest Federal court.

One of the conditions imposed upon persons who seek to practice medicine. is that they shall possess a good moral character. (§ 145.)    The presumption of bad character attaches to a person convicted of a felony.    Formerly it was not thought safe to allow him to be sworn as a witness.    He may now be sworn and give his testimony, but the fact that he is a felon may be shown to impeach his credibility, and the jurors in the exercise of their judgment may disregard his testimony.    The defendant knew at the time he committed the felony that the presumption of bad character would follow his conviction and that he would have to bear the resulting consequences.    If, therefore, the legislature may impose conditions upon which persons of good character shall engage in the practice of medicine, and may impose a punishment for all persons violating the conditions, it appears to us that the legislature may also prohibit from practicing a person who has been convicted of a felony, whose character is presumed to be bad, who has never before studied or practiced medicine, and who has not conformed to a single condition or requirement of the statute under which other persons are licensed to practice.

The defendant has been deprived of no rights secured to him by the United States or State Constitution.

The judgment of the appellate division should be reversed, and that entered upon conviction affirmed, and the proceedings should be remitted to the court of general sessions of the peace in and for the county of New York, there to be proceeded upon according to law.

All concur (ANDREWS, Ch. J., and BARTLETT, J., in result solely on the ground that the record contains no evidence that the defendant at the time of his conviction, or at any other time, was a physician), except MARTIN, J., dissenting, and O'BRIEN, J., who dissents as per following memorandum:

"I cannot concur in this judgment. I think it was correctly decided in the court below for these reasons:

"1. The statute is wholly prospective.

"2. The statute in question punishes the defendant for an offense committed twenty-five years ago, and of which he was then convicted and for which he was punished. The statute plainly inflicts an additional punishment, and is in conflict with the Constitution."

Judgment reversed, etc.

### NOTE.

Statute, which permits infliction of less degree of same kind of punishment than was permissible when offense was committed, is not *ex post facto* law. People v. Hayes, 140 N. Y. 484 · 56 S. R. 456 ; aff'g, 54 S. R. 184.

---

## Supreme Court, First Department.

February, 1897.