(89 Misc. Rep. 243)

PEOPLE ex rel. KNOBLAUCH v. WARDEN OF CITY PRISON.

(Supreme Court, Special Term, New York County. February, 1915.)

1. MUNICIPAL CORPORATIONS &#8681;604—SANITARY ORDINANCE—VALIDITY.
    Sanitary Code, § 80, providing that no unmuzzled dog shall be permitted on the public highway or in any public park or place in the city of New York, which ordinance was enacted by the board of health pursuant to Greater New York Charter (Laws 1901, c. 466) § 1172, is a provision for the protection of life and health, and not unconstitutional.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1335–1337; Dec. Dig. &#8681;604.]

&#8681;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. MUNICIPAL CORPORATIONS ☞604—ORDINANCES—POSSESSION OF DOGS—IN-FRINGEMENT OF RIGHT.**

The right to the possession of dogs in the city of New York is subject to the limitation that such possession must not interfere with the security, health, and comfort of other inhabitants of the city; and hence duly enacted ordinances for the protection of public health and comfort do not infringe such right.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1335–1337; Dec. Dig. ☞604.]

Habeas corpus by the People, on the relation of Mary B. Knoblauch, against the Warden of the City Prison. Writ dismissed.

Rembaugh & Towle, of New York City (Bertha Rembaugh, of New York City, of counsel), for relator.

Wm. H. Kehoe, Corp. Counsel, and Stanley Richter, both of New York City, for respondent.

LEHMAN, J. [1] The relator has been held by a city magistrate for violation of section 80 of the Sanitary Code:

"No unmuzzled dog shall be permitted at any time to be on the public highway or in any public park or place in the city of New York."

She now claims that her detention is illegal on the ground that the regulation is unconstitutional. This section of the Sanitary Code was enacted by the board of health by virtue of the provisions of section 1172 of the charter, giving them power to amend the Sanitary Code, to "publish additional provisions for the security of life and health in the city of New York, * * * not inconsistent with the Constitution or laws of this state." The relator and the American Kennel Club, which has been given the right to file a brief in this proceeding, now urge that the board of health has no power to pass any such ordinance, on the ground that under section 51 of the charter the board of aldermen has been expressly given the power "to regulate or forbid the keeping of dogs," and that this power is exclusive, or, if not exclusive at the start, it became exclusive when the board of aldermen had exercised its power by regulating the presence of dogs in "public streets, highways, and parks," by ordinance of June 13, 1911.

It seems to me that this contention is not in accord with logic or precedent. The board of aldermen is given power to enact ordinances and general regulations covering a wide range of subjects for the general welfare of the city. Matters of health are, however, specifically placed within the jurisdiction of the board of health, and if the general regulations made by the board of aldermen are insufficient, in that they fail to forbid acts which are detrimental to the health of the public, it seems to me that it would be unreasonable to hold that the board of health has no power to make additional regulations. Such a holding would preclude the board of health from making regulations in regard to so many matters that its jurisdiction to legislate in regard to public health would be most seriously restricted. A most cursory reading of the Sanitary Code shows that the board of health has enacted many ordinances which in some manner relate to matters which

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the board of aldermen has general power to regulate, yet the validity of these ordinances has always been upheld. A general power in the board of aldermen to regulate certain businesses and acts is in no wise in conflict with a power of the board of health to impose additional provisions for the specific purpose of protecting the public health. The provision of the Sanitary Code is therefore valid, if it is a provision for the security of life and health within the meaning of the statute, and is not in conflict with the Constitution.

The primary object of the ordinance is to secure protection against rabies. In spite of the discussions as to the prevalence or even existence of this disease, the prevailing opinion, both lay and medical, is that such a disease exists and is a menace to public health. The official records of the board of health show that in each of the last two years there have been 8 cases of human rabies, and that during the year 1907 there were 28 cases of human rabies. The percentage of mortality in such cases is 100; that is to say, the disease, once established, is absolutely incurable. It is also shown that the disease is spread among animals by one rabid animal biting a sound animal, and is spread among human beings only by bites from rabid animals. The inference from these facts is clear. The protection from a disease which actually exists and kills a number of persons each year is a function of the board of health. The disease can be completely eradicated if it becomes impossible for a rabid animal to bite another animal or a human being, and the disease can be controlled in exact proportion that control and protection from such bites can be secured. Any rule made by the board of health which has a reasonable and direct relation to securing protection from bites of animals which may be rabid is therefore a proper exercise of its functions. The relator does not dispute that this is the law, but urges that the ordinance under consideration goes beyond the needs of the situation. It must be remembered, however, that the determination as to the means of meeting a threatening situation has been vested in the board of health, and not in the courts.

The Society for the Prevention of Cruelty to Animals, which has received leave to file a brief in support of the unconstitutionality of the ordinance, concedes that the comparative rareness of the rabies would not warrant the exposure of human beings to the disease, but urges that:

"It is, however, believed that complete protection to human beings can be effected without the enforcement of so sweeping a regulation as that here under consideration. The court will probably have little difficulty in conceiving of situations where the proper use of a leash or of some form of closed conveyance could secure perfect protection to the public."

This argument, however, entirely begs the real question. The court has nothing to do with the wisdom of the ordinance; perhaps a less sweeping ordinance would effect the same result; perhaps there are conditions where a proper use of a leash would secure perfect protection to the public. The controlling facts are, however, that a leash does not under *all* circumstances afford perfect protection, for it is notorious that leashed dogs at times bite human beings and not infrequently bite other animals, and that in such cases the addition of a

153 N.Y.S.—30

muzzle would have afforded more perfect protection. The disease of rabies must necessarily be exterminated if rabid animals can be prevented from biting sound animals. That result can be reached if the present ordinances are successfully enforced; i. e., if all stray animals are driven from the streets, and dogs allowed only under the double protection of muzzles and leashes. Under the circumstances it seems to me quite illogical to urge that the ordinance bears no reasonable and direct relation to its purpose. Consequently the court must hold that it comes fairly within the power of the board of health, even though the court might feel, which it by no means desires to intimate, that it might have found other means less annoying to dog owners which might prove equally effective.

[2] All of us who own and love dogs must realize that the possession of dogs in the city is subject to the limitation that such possession must not interfere with the security, health, and comfort of the other inhabitants of the city, and the ordinances made by the proper municipal authorities for the protection of health or comfort must be accepted as limitations upon the privilege of such possession. It is urged, however, the ordinance covers cases where a muzzle would be absolutely useless, and would have no bearing upon the protection of public health, for instance, where a dog is in the street, but in an automobile. It is unnecessary in this proceeding to consider whether it does cover such case. It is the duty of the court to give an ordinance, where possible, such construction as would not render it unconstitutional. A construction which would require a muzzle and leash on dogs in automobiles, etc., in the public streets, might or might not be unconstitutional; but, if the courts in a proper proceeding directly raising this question should determine that such a construction would render the statute unconstitutional, they would without doubt also hold that no such construction of the present ordinance is necessary. Writ is therefore dismissed.

Writ dismissed.