J. EUGENE CHALFIN, Plaintiff, *v.* AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS et al., Defendants.

Supreme Court, Special Term, Kings County, January 22, 1945.

*Harry M. Krokow* for plaintiff.

*Barry, Wainwright, Thacher & Symmers* for American Society for the Prevention of Cruelty to Animals, defendant.

*Ignatius M. Wilkinson, Corporation Counsel (Charles C. Weinstein, Sol Cooperman* and *Aaron Coleman* of counsel), for Ernest L. Stebbins, as Commissioner of Health of the City of New York, defendant.

HOOLEY, J. This is an application *pendente lite* to restrain and enjoin the defendants, the American Society for the Prevention of Cruelty to Animals (hereinafter designated as A.S.P.C.A.) and Ernest L. Stebbins, as Commissioner of the Department of Health of the City of New York, from destroying a dog alleged to be owned by the plaintiff. The dog was seized by the defendants on October 31, 1944. A sharp issue of fact has arisen with respect to such seizure. The contention on the part of the defendants is that the dog was seized upon a public street while unrestrained by any chain or leash as required by section 17 of the Sanitary Code of the City of New York and unattended by any person. The plaintiff contends that his dog was seized by the defendants on private property in front of plaintiff's residence. The dog is now at an A.S.P.C.A. shelter, the destruction of the dog having been enjoined by the Supreme Court pending the determination of this motion.

From the affidavits before it, it appears to the court that the dog was found and seized outside of the confines of any home and on the public highway at a time when it was unrestrained by any chain or leash and uncontrolled by any person.

The plaintiff next attacks the constitutionality of the resolution adopted by the Board of Health on October 16, 1944, as an invalid exercise of the police power. The preamble of that resolution recited that persons in the city of New York had been bitten by rabid dogs in the boroughs of The Bronx, Manhattan and Richmond and that the Board of Health found it necessary in the public interest to declare an emergency and to adopt the resolution in question as an emergency means effective for six months for the entire city to cope with the increasing danger of rabies.

The resolution in question is drastic in its operation. In it the Board of Health authorized the Department of Health of the City of New York, its employees, agents or representatives, and the A.S.P.C.A., as such agent, to seize any dog found out-

side the confines of the home of the owner or person in control of such dog which is not effectively restrained by a chain or leash, as required in section 17 of the Sanitary Code, and to remove such dog to one of the shelters of the A.S.P.C.A., and further authorized the Department of Health, its employees, agents or representatives, to keep such dog for forty-eight hours after such seizure, and then destroy the same, unless within the said forty-eight hours the dog is claimed and the owner or claimant of the dog obtains and provides suitable quarters for the isolation and quarantine of the dog for a period of not less than six months in a veterinary hospital approved by the Board of Health as maintaining suitable quarters for the isolation and quarantine of dogs. The resolution further provided that if after such period of six months the dog is not found rabid or suspicious of rabies, it should be released to the owner or claimant by the Department of Health upon the certification by a duly licensed veterinarian that the dog is not rabid or suspicious of rabies.

This resolution is assailed as being arbitrary, oppressive and class legislation and in violation of section 17 of article III of the Constitution of the State of New York. It is claimed that an exclusive privilege, immunity or franchise is being conferred on the A.S.P.C.A. and that tremendous discretionary power is given to the last-named organization under the resolution, and it is further claimed that such organization has exercised that power in a ruthless manner. Of course the Department of Health has the power to employ agents to carry out its directions, and in emergencies its power in this respect is almost unlimited. Furthermore, the language of the resolution does not grant to the A.S.P.C.A. any discretion as to what dogs shall be destroyed. The A.S.P.C.A. has become universally recognized throughout the entire country because of its humane activities in behalf of animal life, and there is nothing in the record which indicates that it has acted arbitrarily or ruthlessly in this case. It did not bring the resolution into being. That was done by the health officials of the City. It is to the credit of the Board of Health that it appointed the A.S.P.C.A. to carry into effect the provisions of the resolution. That action conveyed to the public generally the assurance that the seizure, keeping, and even destruction of the dogs, which the Health Department of the City deemed necessary to the public health, would be performed in a decent and humane manner instead of in a cruel and brutal manner which some irresponsible dog catcher who might be appointed might adopt. There is nothing in the record to justify the criticism of the A.S.P.C.A. which

has been indulged in not only by the plaintiff but also by others. The court is unable to find any violation of the Constitution in this phase of the matter.

The plaintiff also asserts that six months is too long a period to keep the dog in custody after seizure, and the writings of a medical authority have been submitted to the court to prove that a two months' period of confinement would be sufficient. The City, however, presents the affidavit of Dr. Samuel Frant, Director of the Bureau of Preventable Diseases in the Department of Health, which affidavit shows that after a dog has been bitten by a rabid animal as much as six months or even more may elapse before the disease manifests itself. When it is remembered that the record before this court shows that there are approximately 30,000 cases of dog bite reported to the Health Department of the City of New York annually, and that these dog bites may cause not only rabies but deforming scars, badly infected wounds with possible blood poisoning, severe hemorrhage from torn blood vessels, shock and even death, it is plain to be seen that we are dealing with a very serious matter. The court, upon these conflicting claims and under the circumstances here presented, prefers to follow the medical authorities of the City of New York.

The resolution is also attacked as making an unfair distinction between people of moderate or small resources and their more affluent neighbors who are able to meet the very heavy expenses which will come upon them if their dog is seized and placed in suitable quarters for isolation and quarantine for a six months' period. It is true that the resolution in question may entail great financial hardship for any person who permits his dog to go unleashed, and in many cases may result in the ultimate destruction of such dog, for which a person may have a deep affection, because of the utter impossibility of such owner meeting the financial payments necessary in order to save the life of the dog. On the other hand, it is to be remembered that where these payments are made, they are in no sense penalties or fines but are expenses unfortunately necessitated in order to preserve the public health of the people of a great city from one of the most dreadful diseases known to medical science; that the emergency is temporary only and will end six months from October 16, 1944, and was brought about by reason of the fact that the Board of Health of the City, by the resolution in question, declared that a condition dangerous to life and health due to the foci of rabies in dogs existed in the city of New York.

In *People* v. *Hawker* (152 N. Y. 234, 241–242) the court said: " One of the highest functions of government is the preservation· of the public health. * * * The Constitution provides that no person shall be deprived of life, liberty or property without due process of law, yet this provision of the organic law is made subordinate to that of paramount necessity, and the rights secured thereby to the citizen must yield to that of the preservation of the public health."

In *Matter of Viemeister* (179 N. Y. 235, 238) the court said: " When the sole object and general tendency of legislation is to promote the public health, there is no invasion of the Constitution, even if the enforcement of the law interferes to some extent with liberty or property."

In *People ex rel. Knoblauch* v. *Warden* (89 Misc. 243; 245–246) the court said: " Any rule made by the board of health which has a reasonable and direct relation to securing protection from bites of animals which may be rabid is, therefore, a proper exercise of its functions. The relator does not dispute that this is the law, but urges that the ordinance under consideration goes beyond the needs of the situation. It must be remembered, however, that *the determination as to the means of meeting a threatening situation has been vested in the board of health and not in the courts.*" (Underscoring ours.)

The resolution of the Board of Health is a valid and reasonable exercise of the police power of the State. It is a measure designed for the protection of the public and to secure the public from the dangers of rabies, a noncurable disease with a 100% mortality. The natural right of liberty and property must occasionally yield if such sacrifice is necessary in order that organized society as a whole may be benefited. The inevitability of death, once the disease is contracted, the fact that six months may elapse between the date of the dog's exposure to rabies and the first manifestation of the disease in the dog, the fact that there are no known tests or examinations which will determine whether an animal which has been exposed to rabies will eventually prove to be rabid, and the fact that a dog in the first few days of infection may present no symptoms of the disease and yet may transmit the disease to other animals or humans, all argue in favor of the reasonableness and necessity of the resolution which is being attacked.

It is urged that because plaintiff is a physician he is as well able as any veterinarian to care for the dog during the six months' period. Without discussing the qualifications of plain-

tiff in this respect it is sufficient to state that no special rule may be made for this individual case.

The court should be loath upon affidavits to interfere with the determination of the Board of Health in so serious a situation and therefore the application is in all respects denied.

However, if the owner of the dog desires to prevent its destruction he may arrange for the isolation and quarantine of the dog in accord with the resolution from now until a final adjudication of the pending action upon the merits after a trial thereof and, in view of the drastic provisions of the resolution and its very great hardship upon the dog owner, the court directs that this action be set down for trial at the head of the calendar for February 5, 1945, subject however to the approval of the justice there presiding. The Clerk of Special Term, Part III, is directed upon the filing of a copy of the order to be entered hereon and the payment of the necessary fees to so place the case upon the calendar for that date. This will bring about a speedy disposition of this action upon the merits and will save the owner from considerable expense if upon the trial the resolution be determined to be an invalid exercise of the police power. Settle order on notice.