LAWRENCE A. STEINBERG, Plaintiff, *v.* ERNEST L. STEBBINS, as Commissioner of the Department of Health of the City of New York, Defendant.*

Supreme Court, Special Term, Queens County, April 6, 1945.

* See, also, *Preudhomme* v. *Stebbins,* 269 App. Div. 409.— [REP.

*Harry M. Krokow* for plaintiff.

*Ignatius M. Wilkinson, Corporation Counsel* (*Charles C. Weinstein* and *Sol Cooperman* of counsel), for defendant.

FROESSEL, J. The essential question to be decided in this equity suit is the validity of a resolution adopted by the Board of Health of the City of New York on October 16, 1944, the pertinent provisions of which are as follows: "RESOLVED, that the Board of Health hereby declares a condition dangerous to life and health due to the foci of rabies in dogs to exist in the City of New York, and that for the purpose of eradicating such foci the entire city must be considered as one unit in rabies control work, and by reason thereof, during the existence of such emergency but for a period not exceeding six months from October 16, 1944, hereby authorizes the Department of Health of the City of New York, its employees, agents or representatives and the American Society for the Prevention of Cruelty to Animals as such agent to seize any dog found outside the

confines of the home of the owner or person in control of such dog which is not effectively restrained by a chain or leash, as required in Section 17 of the Sanitary Code of the City of New York, and to remove such dog to one of the shelters of the Society for the Prevention of Cruelty to Animals, and hereby further authorizes the said Department of Health, its employees, agents or representatives to keep such dog for 48 hours after the time of such seizure and then destroy same, unless within the said 48 hours the dog is claimed and the owner or claimant of the dog obtains and provides suitable quarters for the isolation and quarantine of the dog for a period of not less than six months in a veterinary hospital approved by the Board of Health as maintaining suitable quarters for the isolation and quarantine of dogs, after which period the dog, if found not rabid or suspicious of rabies, shall be released to the owner or claimant by the Department of Health upon certification by a duly licensed veterinarian that the animal is not rabid or suspicious of rabies  *  *  *."

This resolution is the last of three which were adopted during the year 1944 by reason of the claimed peril of the disease of rabies in dogs in the city of New York. The first resolution was adopted on March 30, 1944, following the seizure of a number of rabid dogs in the borough of The Bronx in the early part of said year. It provided for the seizure during the six-month period following the date thereof of any dog found outside the confines of the home of the owner or person in control of such dog in the borough of The Bronx not effectively restrained by any chain or leash, as required by section 17 of the Sanitary Code, and its removal to one of the shelters maintained by the American Society for the Prevention of Cruelty to Animals for its immediate destruction. On May 26, 1944, the Board adopted a resolution in substantially the form of the one now challenged, but limited in its enforcement to the borough of The Bronx. The resolution now under consideration contains additional recitals and extends the provisions of the resolution of May 26, 1944, to the five boroughs of the city of New York.

The Board of Health of the City of New York was reconstituted by chapter 22 of the New York City Charter, which became effective on January 1, 1938. Subdivision b of section 558 thereof empowers it " to alter, amend or repeal any part of the sanitary code, and may therein publish additional provisions for the security of life and health in the city and confer additional powers on the department not inconsistent with the constitution or laws of this state or with this charter, and may

provide for the enforcement of the sanitary code or any orders made by the commissioner or the board of health, by such fines, penalties, forfeitures and imprisonment as may be prescribed therein or otherwise by law."

Section 17 of the Sanitary Code referred to in said resolution provides as follows: " No dog shall be permitted at any time, to be on any street or in any public park or place in the city of New York, unless effectively restrained by a chain or leash not exceeding six feet in length."

This suit was instituted on or about the 22nd of December, 1944, for the return of plaintiff's dog, it being alleged that its seizure by defendant's agent on November 9, 1944, while caught by its chain to a gate in front of premises in St. Albans, Queens County, was wrongful and its detention illegal and contrary to law. The plaintiff then moved for a summary order directing the dog's return. The motion came on to be heard in Special Term, Part I, of Kings County, before Mr. Justice HOOLEY (N. Y. L. J., Jan. 24, 1945, p. 313, col. 5), at which time the court also heard argument in the case of *Chalfin* v. *American S. P. C. A.* (184 Misc. 15, 21), in which a motion was made to restrain the defendants therein from destroying a dog owned by that plaintiff, which was seized under the provisions of the resolution of October 16, 1944. The learned court discussed the specific attacks made by Chalfin on said application with respect to the validity of the resolution in question in a comprehensive opinion, but concluded that it was " loath upon affidavits to interfere with the determination of the Board of Health in so serious a situation " and denied the application, but " in view of the drastic provisions of the resolution and its very great hardship upon the dog owner " it directed that the case be set down for trial. Simultaneously the court denied plaintiff's application in the case at bar for the reasons stated in the *Chalfin* case (*supra*).

At the trial the defendant's answer, which originally contained, in addition to denials, three defenses, was amended by the withdrawal of the first and third defenses; the allegations of the first, however, were allowed to remain as part of the second defense, in which certain facts are pleaded, upon the basis of which it concludes that the resolution in question was necessary and reasonable. While there was no evidence of the actual circumstances surrounding the seizure of plaintiff's dog and the circumstances of its presence at the premises in question, it was conceded by plaintiff upon the record " for the purposes of this trial, that there has been a violation of

section 17 of the Sanitary Code '' coupled with the claim, however, that the resolution was unconstitutional.

The plaintiff contends that upon the law, and the evidence adduced on the trial, which consisted largely of opinions of expert witnesses and public records, the resolution challenged should be declared invalid. He urges (a) that there was no emergency justifying it, (b) that it failed to distinguish between dogs that might possibly have spread or acquired the infection and those which it could be demonstrated by proof in no wise contacted man or animal, and (c) that the six-month period of quarantine was unreasonable.

At the outset, it may be observed that while at common law dogs were considered to be property of an inferior sort, the modern conception is that they are domestic animals, and as such the subjects of property or ownership. In some respects, however, property in dogs is still '' of an imperfect or qualified nature, and they may be subjected to peculiar and drastic police regulations by the state without depriving their owners of any Federal right.'' (2 Am. Jur., Animals, §§ 7, 31; *Fox* v. *Mohawk & H. R. Humane Society,* 165 N. Y. 517, 522; *Nicchia* v. *New York,* 254 U. S. 228.)

There is no occasion to dwell on the value of dogs to mankind, with which we are all familiar — the seeing-eye dog to the blind, the dogs that have been used in the war to accompany patrols, to carry messages, to detect mines, and to carry food to the front, the dogs that save human life in a variety of ways, and the companionship between these animals and people who are sick, aged or disabled, as well as those who are well. On the other hand, their danger in spreading rabies is well recognized. This dread disease was known from the earliest times. Aristotle and other ancient writers refer to it as a well-known illness. It is an infectious disease of the central nervous system. The virus is present in the saliva of diseased animals and passes to a new host, animal or man, in the great majority of cases, through wounds inflicted by a dog bite. It is incurable, but is in large measure preventable by control of the dog population.

The burden of showing the invalidity of the resolution here challenged is upon the plaintiff. In *People ex rel. Knoblauch* v. *Warden, etc.* (216 N. Y. 154, 162, affg. 168 App. Div. 951, affg. 89 Misc. 243) the Court of Appeals, in upholding the New York City dog muzzling ordinance, concluded: '' When, however, an ordinance is within the power of the body which passed it, the presumption is that it is reasonable and just, and the judicial power to declare it void can be exercised only when, from the

inherent character of the ordinance or from evidence showing its operation and effect, it is demonstrated to be otherwise. The burden of showing the unreasonableness from evidence is on the person asserting it." (See, also, Administrative Code of City of New York, § 564–2.0; L. 1937, ch. 929.)

In determining an issue of this character, Mr. Justice CROUCH (later a Judge of our Court of Appeals) said in *Safee* v. *City of Buffalo* (204 App. Div. 561, 563) that two tests are to be applied " 1. Is there a real evil, reasonably to be anticipated and to be guarded against? 2. Is there a reasonable relation between the evil and the proposed remedy?  *  *  *  And the answers are to be given by the court.  *  *  *  But such answers must of necessity be founded frequently upon a consideration of debatable facts."

Taking first plaintiff's contention that the six months' period of quarantine was unreasonable, the record does not support this view. The proof is overwhelming that the period of incubation of rabies in dogs may extend over a period of approximately six months. All the experts of the defendant so testified, and the only competent witness produced by the plaintiff admitted that " the period of incubation runs from several weeks to possibly, in a few cases, six months." Proof was also given of an actual case in Richmond County in 1942 where the incubation period was five months and three days. The experience in other countries supported the defendant's position. The plaintiff has utterly failed to establish the burden of proof in this respect.

Nor am I impressed with the contention made by the plaintiff that there was no emergency with respect to rabies in dogs justifying action by the health authorities. It is true that the evidence showed that in New York City the number of rabid dogs during the last nineteen years dropped from a high of 456 in each of the years 1926 and 1927 to a low of 14 in 1943, and to 34 in 1944; that during the same period the persons bitten by rabid dogs dropped from a high of 536 in 1926 to a low of 7 in 1943 and to 36 in 1944; that during the same period the number of humans who were afflicted with rabies totaled 20, and during the last three years there was but one; that from March 30, 1944, to January, 1945, under the resolutions hereinbefore referred to, 10,811 dogs were destroyed, and an examination of each one of them prior to their destruction disclosed no evidence of rabies whatever; that 516 dogs were quarantined during the same period and none of these dogs has been reported as having rabies. On the other hand, the evidence also showed

that there were about 360,000 licensed dogs in the City of New York, and about 27,000 recorded dog bites per year, thus showing conditions which render rabies possible; that there has been one case of human rabies resulting in death of a Bronx resident on September 13, 1944; and that there were foci of infection not only within the city, but also in the adjoining county of Westchester and other areas surrounding the city of New York. Moreover, with every possible precaution, rabies may be introduced from elsewhere outside the city, as there are no police barriers at the city lines.

The fact that there have been comparatively few cases of human rabies in the city of New York in recent years does not in and of itself demonstrate that no emergency exists; for this result we are indebted to our health authorities and the co-operation of the public generally. We do know that large numbers of dogs are present, that many of them bite, and that the disease exists. Once rabies is contracted by a human being, it is without exception fatal. It was the duty of the defendant to take proper measures of control; it had a right to promulgate a resolution to meet even a merely threatening situation, and with its determination the courts should not lightly interfere. As was stated by Mr. Justice LEHMAN in *People ex rel. Knoblauch* v. *Warden* (89 Misc. 243, 245, affd. 168 App. Div. 951, affd. 216 N. Y. 154, *supra*): " Any rule made by the board of health which has a reasonable and direct relation to securing protection from bites of animals which may be rabid is, therefore, a proper exercise of its functions.''

The remaining contention of the plaintiff, namely, that the resolution in question failed to distinguish between dogs that might possibly have spread or acquired the infection and those which it may be demonstrated by proof in no wise contacted man or animal, presents a different situation. We have here a control measure designed to prevent the transmission of rabies. Where there is no contact or bite, there can be no such transmission. The resolution may indeed properly reach those cases where there is a possibility that a dog may have bitten or been bitten, but where it can be demonstrated by proof that a dog during a particular period of time in no wise contacted man or animal, and is not otherwise suspected of infection, there is no reasonable relation between the remedy and the evil. (*Safee* v. *City of Buffalo*, 204 App. Div. 561, *supra*.) Yet the resolution strikes at both alike. Assume, by way of illustration, a dog who for a brief interval escapes from its owner and yet remains within his immediate view and con-

tacts neither man nor animal; under the resolution the dog may be seized and destroyed within forty-eight hours, unless the owner arranges for quarantine at a cost to him of upwards of $180, there being no adequate existent public facilities for quarantine at a more modest cost. To a great many dog owners who cannot afford such outlay, this spells destruction of their dogs.

While in the interests of public health we cannot be concerned about individual hardships, yet where it can be satisfactorily demonstrated that a dog has not been in contact with man or animal and is not otherwise suspected of infection, what justification is there for destruction or quarantine, unless all dogs in the city of New York are to be so dealt with? Dr. Leake, the medical director of the United States Public Health Service and a witness for the defendant, testified that he would not favor the summary destruction of all dogs in the city of New York; Dr. Hagan, another defense witness, stated that this would be unreasonable, and Dr. Stebbins, our Health Commissioner, said that such a course was not necessary.

It is true that in order to protect the public health, penal statutes may be provided to guard against failure to keep dogs under restraint in any event, and fines may be imposed for their violation, but then a defendant has an opportunity to be heard. The purpose of the resolution here challenged, however, is not to penalize the dog owner, but to prevent the spread of rabies. Once a dog, even for an instant, is on a public highway and unleashed, whether accidentally or otherwise, the drastic provisions of the resolution automatically follow and its owner is arbitrarily penalized by the seizure of his property for destruction, the only alternative to which is a quarantine for six months and the payment of upwards of $180 to a private veterinarian operating for profit; yet no opportunity is afforded the dog owner to be heard either before a court or the health authorities. Such an omission, it seems to me, renders the resolution arbitrary and unreasonable. Even the defendant's witness, Dr. Eichhorn, a well-qualified veterinarian, when asked whether six months' "quarantine with a private veterinarian of a dog who is merely on the public highway for a few moments * * * is reasonable", frankly admitted: "I think it's arbitrary, a few moments, or a few minutes."

One of the tests to be applied in determining the constitutional validity of a statute is what might be done under cover of its provisions. As was said by our Court of Appeals in *People ex rel. Beck* v. *Graves* (280 N. Y. 405, 410) quoting from

*Stuart* v. *Palmer* (74 N. Y. 183, 188) " ' The constitutional validity of law is to be tested, not by what has been done under it, but what may, by its authority, be done.' "

Viewed in the light of the foregoing, I am of the opinion that while the resolution in question may in other respects be sustained as an emergency measure in order to protect the health and general welfare of the people of this city, the Board of Health, unwittingly to be sure, has exceeded the powers delegated to it in failing to provide any opportunity for an owner to demonstrate by satisfactory proof that his dog has not contacted any animal or human while not restrained as provided in the Sanitary Code. (Cf. *People* v. *Ringe,* 197 N. Y. 143, 151.) This defect is vital, affects the entire subject matter, meaning and purpose of the resolution, and there is no opportunity to sever the good from the bad. What was said by CARDOZO, J., in *Fougera & Co.* v. *City of New York* (224 N. Y. 269, 282), aptly applies to the case at bar:

" What is before us now is not an act of the legislature. It is an ordinance of the department of health. The ordinance has been adopted under a general grant of power * * *. It strikes the good and the bad alike. The board of health is a subordinate agency of local government. Wide powers of regulation it doubtless has * * *. But the power to regulate is not always equivalent to the power to destroy * * *. The defect is so far reaching, it is so deeply wrought into the substance of the law, that there is no opportunity to sever the good from the bad [citing cases]. To do that, we should have to rewrite the ordinance. It does not classify or except or excuse * * *. It does not err in some minor incident or in its effect upon a few. Its fault is inherent in its scheme and extends to many. * * * Even in such circumstances, the courts wait before pronouncing a law void until some one within the range of the illegal provision has set their processes in motion. But when such a one has invoked their aid, they do not say that an inseparable law is void as to him and valid as to others. They strike it down altogether * * *."

It follows that the defendant's motions to dismiss the complaint at the end of the plaintiff's case and at the close of the entire case are denied, with appropriate exceptions, and judgment rendered in favor of the plaintiff. In arriving at this determination I have wholly disregarded plaintiff's Exhibits 1, 3 and 5.

Settle judgment on notice.